ARNOLD GARDNER v. COCA-COLA BOTTLING COMPANY
OF MINNESOTA, INCORPORATED, AND ANOTHER.

127 N. W. (2d) 557.

March 26, 1964—No. 39,170.

*Sachs, Latz & Kirshbaum* and *Mitchell I. Kirshbaum,* for appellant.
*Faegre & Benson, Paul J. McGough,* and *G. Alan Cunningham,* for respondent bottling company.

*Joseph L. Nathanson,* for respondent Prass.

KNUTSON, CHIEF JUSTICE.

Plaintiff appeals from judgments entered in favor of defendants and from an order denying his motion for judgment notwithstanding the verdict or a new trial.

The case arises out of an injury sustained by plaintiff while opening a bottle of coca cola bottled by defendant Coca-Cola Bottling Company of Minnesota, Incorporated (referred to hereinafter as Coca-Cola), sold by it to defendant Joseph Prass, an individual doing business as Joe's Tavern (referred to hereinafter as Prass), and sold by him to plaintiff.

Plaintiff was employed by Josid Hardware. For his noon lunch, he customarily went next door to Prass' tavern and purchased two bottles of chilled coca cola, which he took back to his place of employment and drank with his lunch. As usual, on January 5, 1960, he made such a purchase. After returning to his place of employment he opened and drank one bottle. When he attempted to open the second bottle, the crown of the bottle on which the cap was affixed broke and severely cut his thumb, for which he seeks damages. At the close of plaintiff's case, the court dismissed the action as to defendant Prass, and the jury returned a verdict in favor of defendant Coca-Cola.

In opening these bottles, plaintiff used an opener furnished by Midwest Paint Manufacturing Company and supplied by plaintiff's employer to purchasers of paint. It is referred to in the record as a "lid flipper." One end of the opener consists of a three-pronged opening resembling a church key, and the other end is similar to a screwdriver. The open end is slightly larger than the usual bottle opener. It can be used by placing the two prongs on one side of the opening under the cap and lifting the cap off the bottle or by placing the single prong under the cap and pressing down on the handle. Plaintiff used it in the latter fashion.

Each side in the trial called an expert. Plaintiff's expert, Fulton Holtby, whose direct contact in the field of glass technology was quite limited, testified that in his opinion the glass broke because of some abnormal condition in the glass, the nature and type of which he was unable to identify after an examination of the glass fragments. He admitted that the breakage could have been caused by transmission of

sufficient downward pressure on the handle to the outward prong under the crown to make direct contact with the glass locking ring rather than with only the cap.

Defendants' expert, Richard J. McHugh from the University of Detroit, was of the opinion that the glass broke because plaintiff chose to use an oversize opener which, when used in the manner in which plaintiff used it, came in direct contact with the glass and caused it to break when pressure was applied to the opener.

The case was tried and submitted to the jury on both the theories of negligence and breach of an implied warranty. The court submitted the possible application of the res ipsa loquitur doctrine in connection with the claim of negligence.

Plaintiff claims that the court erred (1) in granting a dismissal as to Joseph Prass; (2) in refusing to grant certain instructions requested; (3) in submitting written interrogatories upon particular questions of fact to the jury in connection with a general verdict; and (4) in excluding certain testimony of plaintiff's expert and allowing other testimony of defendants' expert. He contends that the verdict is contrary to law and is not justified by the evidence.

Essentially, plaintiff claims that defendant Coca-Cola should be held liable as a matter of law. Other claims of plaintiff in connection with his assignments of error will be mentioned as they are discussed.

The liability of a seller of a product contained in a bottle or container manufactured by another, as well as the liability of the retailer who finally places the product in the channels of trade, has been the source of a great deal of litigation. The authorities are not in harmony on any phase of the subject. It would be useless to try to reconcile them. An exhaustive annotation of the subject may be found in 81 A. L. R. (2d) 229.

The trend has been increasingly to apply a strict liability to the consumer. In order to accomplish that result, the courts have evolved or followed various theories. Former defenses such as lack of privity have fallen in the process. Many of the authorities and articles are collected in an exhaustive article by Dean William L. Prosser entitled *The*

*Assault upon the Citadel (Strict Liability to the Consumer)*, 69 Yale L. J. 1099.

Many of the cases involve exploding bottles of carbonated beverages. The distinction between such cases and the one now before us should be apparent. Here the determinative question, as the case was tried, was whether the bottle broke as a result of a defect in it—for which defendants were responsible on one theory or another—or because plaintiff used an improper opener. Implicit in the jury's verdict is a finding that the latter was true.

■ While plaintiff assigns a number of errors, apparently his main thrust is his contention that he is entitled to recover as a matter of law. This contention, as we understand his argument, is premised on the assumption that under the doctrine of res ipsa loquitur an inference of negligence is required as a matter of law or on the assumption that under a theory of breach of implied warranty, where a bottle, such as we have here, breaks while being opened with an instrument used in a proper manner, liability follows as a matter of law. The weakness of plaintiff's argument lies in the fact that under the rule we follow res ipsa loquitur permits but does not require an inference of negligence[1] and that under the theory of a breach of implied warranty the evidence is not so conclusive as to require a finding in plaintiff's favor, and the jury has found against him.

Plaintiff was given the benefit of the res ipsa loquitur doctrine if the jury found that the bottle broke as a result of a defect existing in it. In Weggeman v. Seven-Up Bottling Co. 5 Wis. (2d) 503, 509, 93 N. W. (2d) 467, 472, relied upon by plaintiff, the court said:

"While the jury were thus permitted to infer from the fact of the explosion, with its background, that the bottle suffered from a manufacturing defect when delivered by defendant and that defendant was negligent in not discovering the defect, the jury declined to do so. In this state, and by the weight of American authority, *res ipsa loquitur*

---

[1]See, Prosser, *The Procedural Effect of Res Ipsa Loquitur*, 20 Minn. L. Rev. 241, 245; 2 Harper and James, The Law of Torts, § 19.11; Johnson v. Coca Cola Bottling Co. of Willmar, Inc. 235 Minn. 471, 51 N. W. (2d) 573.

generally gives rise only to a permissible inference of negligence, not a presumption, and if the jury refuses to draw such inference, that is the end of the matter. * * *

\* \* \* \* \*

"* * * Plaintiffs had the burden of proof, and while *res ipsa* gave them an assist, it was not conclusive on the jury."

The same is true here. The jury simply refused to draw an inference of negligence attributable to defendant Coca-Cola.

The evidence clearly permits an inference that the instrument used by plaintiff to open the bottle was not properly used and that the bottle broke, not because it was defective but because it was opened improperly. Both experts testified that by placing the outer prong of this oversized opener under the cap and applying a downward pressure on the handle the prong could be forced against the glass itself and cause it to break. In the light of such evidence, a finding of negligence is not compelled.

■ Under the doctrine of res ipsa loquitur, if the doctrine is applicable at all, the injury must have resulted from some cause traceable to Coca-Cola.[2]

■ If an inference is permissible from the evidence that the injury resulted either from the negligence of Coca-Cola or from something which was attributable to plaintiff, it is for the jury to draw the inference and not this court.

■ When a trial produces testimony by experts who have divergent opinions, it is largely up to the jury to decide which expert they will believe. The jury here found in answer to an interrogatory that there was no defect in the bottle when delivered to Prass. Obviously they accepted the opinion of Coca-Cola's expert as the more reliable.

■ Before liability can result from a breach of an implied warranty there must be proof from which an inference is permissible that the product was defective. In Prosser, Torts (2 ed.) § 84, p. 509, we find the following:

"* * * The existence of the warranty of course does not eliminate

---

[2]Wilson v. Home Gas Co. Inc. 267 Minn. 162, 125 N. W. (2d) 725.

the necessity of proof that the product was defective when it left the defendant's hands; * * *."

It must appear that the defect, if there was one, was a producing cause of the mishap.[3] The evidence is not so conclusive as to require an inference as to either of these requirements.

6. Plaintiff contends that it was error to submit contributory negligence as a defense in an action based on a breach of implied warranty.

On this issue the authorities are hopelessly divided.[4] In this state we have adopted the theory that an action based on breach of an implied warranty at least has its roots in tort[5] and that contributory negligence is a defense. In Nelson v. Anderson, 245 Minn. 445, 450, 72 N. W. (2d) 861, 865, we said:

"Historically, breach of implied warranty in the sale of goods was a tort. The action was a tort action.

"While there are cases to the contrary, we believe that the weight of authority and sound reason support the view that, in an action based on a breach of implied warranty, contributory negligence of the buyer is a good defense insofar as a right to recover consequential damages is concerned."

While we realize that there are respectable authorities to the contrary, we adhere to that view.[6]

In this case it may be that the term "contributory negligence" is a misnomer. The case was tried largely on the issue of whether the bottle broke because it was defective or as a result of plaintiff's improper use of an opener. Contributory negligence would arise only if the jury

---

[3]Courtois v. General Motors Corp. 37 N. J. 525, 182 A. (2d) 545.

[4]See, CCH, Products Liability Rep. par. 3070; 1 Hursh, American Law of Products Liability, § 3:9; 1 Frumer and Friedman, Products Liability, § 16.01[3].

[5]See, Prosser, *The Assault upon the Citadel (Strict Liability to the Consumer)*, 69 Yale L. J. 1099, 1126.

[6]See, Prosser, *The Assault upon the Citadel (Strict Liability to the Consumer)*, 69 Yale L. J. 1099, 1147; see, also, Barefield v. La Salle Coca-Cola Bottling Co. 370 Mich. 1, 120 N. W. (2d) 786, holding that assumption of risk was a defense in an action based on breach of warranty.

found that the bottle was defective in some manner but that the negligence of plaintiff proximately contributed to its breakage. In view of the jury's finding that the bottle was not defective, it is quite apparent that there was no need to reach the question of contributory negligence.

■ With respect to plaintiff's claim that the court erred in refusing to give certain requested instructions, about all we need say is that we have examined the charge given as a whole and find that it adequately covered the issues involved. We have frequently held that the trial court has considerable latitude in the choice of language to be used in its instructions and that, if the charge read as a whole adequately presents the law on the issues involved, we will not reverse simply because a litigant preferred to use other language.[7]

Here the jury was instructed inter alia that Coca-Cola may be held liable if the bottle was defective when delivered to Prass; that it might be found negligent for failure to discover an existing defect; that the bottle must be found to be defective before Coca-Cola could be held negligent or liable on the theory of a breach of an implied warranty; that the bottle must be such that it would withstand anticipated handling or normal handling and opening; that defendant's degree of care must be commensurate with the risk or danger known or reasonably to be apprehended; that defendant's control over the bottle extends to the time of the occurrence, even though the negligence, if there was such, occurred prior to that time; that defendant impliedly warrants the bottle to be free from defects and is liable if it is not and the breach proximately causes the injury; and that this warranty extends to all handling that could reasonably be anticipated. The instruction pertaining to negligence substantially followed that indicated by this court in Johnson v. Coca Cola Bottling Co. of Willmar, Inc. 235 Minn. 471, 51 N. W. (2d) 573.

Many of plaintiff's claims of error relating to failure to give other requested instructions and to some of the instructions given are wholly irrelevant now in view of the finding of the jury that the bottle was not defective when it was delivered to Prass. In view of that finding,

---

[7]Waldstein v. Amann, 259 Minn. 511, 108 N. W. (2d) 215.

instructions relating to proximate cause became immaterial since the jury never reached that question.

■ Plaintiff next contends that the court erred in submitting special interrogatories in connection with the general verdict and in failing to require the jury to answer all of them.

Whether special interrogatories should be submitted with a general verdict is left almost entirely to the judge's discretion.[8] We find no error in this respect.

When the jury found in answer to the first interrogatory that there was no defect in the bottle when delivered to Prass, it became unnecessary to answer the other interrogatories. We see no merit in plaintiff's contention that they should have been answered. Furthermore, we think the general rule is that the failure to answer interrogatories is not fatal when the general verdict can be supported on the evidence or where the answers which are favorable to the party against whom judgment is rendered would not necessarily render the judgment erroneous.[9]

■ Plaintiff also contends that the court unduly limited the opinion evidence of plaintiff's expert. Professor Holtby was asked, "Professor Holtby, are there several possibilities, any one of which could have caused this bottle to break?" Objection to this question was overruled, after which Professor Holtby answered: "Yes, either—" and was then interrupted with the question: "And would these possibilities all be referrable to the manufacturing process?" The court then said, "Well, now, that's invading the province of the jury. They are the ones who will have to determine that."

An expert may give his opinion if based upon a factual foundation supported by the evidence, even though it directly bears on the issue to be determined by the jury.[10] The court ordinarily is given a wide

---

[8]Rule 49.02, Rules of Civil Procedure; see, Hallada v. G. N. Ry. 244 Minn. 81, 69 N. W. (2d) 673.

[9]Gulf Refining Co. v. Fetschan (6 Cir.) 130 F. (2d) 129.

[10]Woyak v. Konieske, 237 Minn. 213, 54 N. W. (2d) 649, 33 A. L. R. (2d) 1241; Beckman v. Schroeder, 224 Minn. 370, 28 N. W. (2d) 629; Albert Lea Ice & Fuel Co. v. United States Fire Ins. Co. 239 Minn. 198, 58 N. W. (2d) 614; Berg v. Ullevig, 244 Minn. 390, 70 N. W. (2d) 133.

latitude in determining whether there is sufficient foundation upon which an expert may state an opinion. It would not have been error to permit the expert to answer merely because it involved the ultimate question to be answered by the jury.[11]

However, we think that the error, if it was such, is without prejudice. Professor Holtby had previously stated that it was his opinion that the breakage was caused by some abnormal condition existing in the bottle but that he did not know what that abnormal condition was. He had little experience with the manufacture of glass. He also stated that use of the opener used here, in the manner in which it was used, could have caused a breakage of the bottle by the prong's being pressed into the glass. In view of these facts, refusal to permit an answer for lack of foundation was within the permissible discretion of the court. The question was limited to the possibilities of defects in the manufacturing process. There were other facts that should have been taken into consideration.[12] The qualifications of Professor Holtby hardly qualified him to express an opinion as to the lack of proper procedure in the manufacture of the bottle, even if we were to hold that the bottling company was liable for negligence of the manufacturer, which we need not decide here.

Plaintiff also complains of the court's ruling permitting Coca-Cola's expert to compare the size of the openings of various bottle openers with the one used by plaintiff. It is plaintiff's contention that this evidence was irrelevant and prejudicial because the difference in size was so small that plaintiff could not be held to knowledge that the opener he used would cause the accident. We think that plaintiff is wrong. The size of the opener was clearly relevant on the issue of Coca-Cola's negligence and his own contributory negligence. It was the

---

[11]See, Carmody v. Aho, 251 Minn. 19, 86 N. W. (2d) 692; Grismore v. Consolidated Products Co. 232 Iowa 328, 5 N. W. (2d) 646, which contains an extensive discussion of the problem; 20 Am. Jur., Evidence, § 817; 7 Wigmore, Evidence (3 ed.) § 1920.

[12]See Hofstedt v. International Harvester Co. 256 Minn. 453, 98 N. W. (2d) 808, wherein we held that the opinion of an expert cannot be used to supplant evidence required to establish the basic facts.

size of the opener and its construction that, according to Coca-Cola's expert, permitted the prong, when used with a downward motion, to contact the glass and cause it to break. Plaintiff's expert likewise admitted that this was a possibility.

Finally, plaintiff contends that it was error to dismiss the action against Prass at the conclusion of plaintiff's case in chief.

Viewing the case now in the light of the finding of the jury that there was no defect in the bottle when delivered to Prass, coupled with a complete absence of any evidence of conduct on the part of Prass that would support an inference of negligence on his part, the result is right as a matter of law.

Plaintiff argues mainly that the jury could have inferred negligence on the part of Prass under the res ipsa loquitur doctrine or could have found a breach of an implied warranty even though it found no liability as to Coca-Cola.

Res ipsa loquitur has application only to the law of negligence.[13] The doctrine rests on the inherent nature of the act causing the injury and the high probability that it would not have occurred but for the negligence of defendant. In order for the doctrine to apply at all, plaintiff must show that the occurrence is of a kind that does not ordinarily happen in the absence of someone's negligence.[14]

Normally, it must appear that the instrumentality causing the injury is in the exclusive control of the defendant, but this rule has been relaxed to some extent in cases involving injuries caused by exploding or breaking bottles or containers. It is now generally held that the requisite control may relate to the time of the negligent act rather than to the time when the injury occurred.[15]

The authorities are not in harmony on the question of whether the doctrine applies to a retailer who sells goods packaged or bottled by

---

[13]38 Am. Jur., Negligence, § 298; Trust v. Arden Farms Co. 50 Cal. (2d) 217, 324 P. (2d) 583, 81 A. L. R. (2d) 332.

[14]Seeden v. G. N. Ry. Co. 242 Minn. 360, 65 N. W. (2d) 178; Segal v. Bloom Brothers Co. 249 Minn. 367, 82 N. W. (2d) 359.

[15]Johnson v. Coca Cola Bottling Co. of Willmar, Inc. 235 Minn. 471, 51 N. W. (2d) 573.

another. In 1 Frumer and Friedman, Products Liability, § 26.02[3], we find the following:

"Inasmuch as retailers, wholesalers or middlemen have no control of the bottling process, res ipsa has generally been held to be inapplicable to actions against them."

See, also, Atwell v. Pepsi-Cola Bottling Co. of Washington, D. C. (Municipal Ct. App. D. C.) 152 A. (2d) 196; Noonan v. Great Atlantic & P. Tea Co. 104 N. J. L. 136, 139 A. 9, 56 A. L. R. 590.

Many of these cases involve bursting bottles. In actions involving bottles containing carbonated beverages it is generally held that, inasmuch as the retailer has no connection with the bottling process upon which the inference of negligence usually rests under the doctrine of res ipsa loquitur, the doctrine does not apply.[16]

The same ought to be true with respect to latent defects in a bottle or container. The retailer ordinarily has no better opportunity to discover such defects than does the consumer. An inference of negligence can hardly be based on the assumption that such latent defects would not exist or that a bottle containing such defects would not have been used except for the negligence of the retailer. The standard of care of a retailer is that of ordinary care in properly handling and caring for the bottle or container after he receives it.[17]

█ It follows that if liability is at attach to Prass on the theory of negligence it must be affirmatively shown that the defect causing the injury was the result of some act of his in handling or caring for the bottle after he received it. There is in this case a complete absence of such evidence.

It is likewise true that on the liability of a retailer under the theory of a breach of an implied warranty the authorities are not in harmony. As to the contents of the container, it has been frequently held that the seller warrants its fitness for the purpose for which it is sold. Here a strict liability is often imposed. As to the container, it has most fre-

---

[16]Annotation, 4 A. L. R. (2d) 466, § 9.

[17]1 Hursh, American Law of Products Liability, § 2:2.

quently been held that there is no warranty of fitness by the retailer.[18] In any event, there was no evidence from which an inference of breach of warranty by Prass could be drawn.

On the record before us, we are convinced that, in the light of the jury's verdict and the lack of evidence of any act from which negligence on the part of Prass could be inferred, no finding of liability against Prass could stand. It follows that if it was error to dismiss the case as to him it was error without prejudice.

We find no reversible error.

Affirmed.

---

[18]Torpey v. Red Owl Stores, Inc. (D. Minn.) 129 F. Supp. 404, affirmed (8 Cir.) 228 F. (2d) 117; Annotation, 81 A. L. R. (2d) 258; Crandall v. Stop & Shop, Inc. 288 Ill. App. 543, 6 N. E. (2d) 685; Prince v. Smith, 254 N. C. 768, 119 S. E. (2d) 923. Contra, Canada Dry Bottling Co. of Florida v. Shaw (Fla. App.) 118 So. (2d) 840.